**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Antonio Arce-Mendez, et al, | No. CV 05-3857-PHX-JAT |
| Plaintiffs, | **ORDER (AMENDING AND SUPERSEDING ORDER AT DOC. # 157)** |
| vs. | |
| Eagle Produce Partnership Inc., et al, | |
| Defendants. | |

Plaintiffs have filed a number of claims in this lawsuit against their former employer, Defendant Eagle Produce Partnership, Inc. ("Eagle Produce"), and five other entities and persons associated with Eagle Produce, Defendants Phoenix Agro, Inc. ("Phoenix Agro"), SAM Management, Inc. ("SAM Management"), Arthur Martori, Susan Lois Martori, and Ricardo Reyna. Defendants Eagle Produce, Phoenix Agro, SAM Management, Arthur Martori, and Susan Lois Martori ("Defendants") now move for partial summary judgment. After considering the motion, and the response and reply thereto, the Court will grant in part and deny in part Defendants' motion.

**I.     Background**

Plaintiffs Antonio Arce-Mendez, Manuel Canez-Santana, Porfirio Duran, Tiburcio Espinoza-Urias, Carlos Negrete-Guerrero, Evarardo Pimienta-Benitez, Evarardo Pimienta-Inzunza, and Ramon Salazar-Lopez are eight migrant farm workers who worked for Eagle

Produce cutting watermelon during at least one of the watermelon seasons from 2003-2005.[1] As part of their employment agreement, Eagle Produce agreed to pay Plaintiffs the greater of $7.00 per hour or $7.00 per ton of watermelon cut by their harvesting crew. Plaintiffs further maintain that Eagle Produce agreed to provide them with free housing as part of their compensation.

During their period of employment, Eagle Produce permitted Plaintiffs to live in certain buildings located in Harquahala, Arizona. Periodically, Eagle Produce deducted twenty-one dollars from Plaintiffs' paychecks for "rent" of these buildings. Plaintiffs allege that these buildings had numerous defects that rendered them uninhabitable. They further allege that despite numerous complaints concerning the condition of these premises, Defendants refused to make them habitable. Arthur Martori and Susan Lois Martori ("the Martoris") owned the land on which the buildings were located, and Plaintiffs allege that Phoenix Agro owned the buildings themselves.

On November 29, 2005, Plaintiffs filed this lawsuit alleging seven causes of action arising out of events that occurred during their employment with Eagle Produce. Plaintiffs later amended their Complaint to add three more claims. The ten causes of action are: (1) alleged violations of the Migrant and Seasonal Agricultural Worker Protection Act ("MSPA"), 29 U.S.C. §§ 1801 et seq.; (2) alleged violations of the Arizona Residential Landlord and Tenant Act ("ARLTA"), Arizona Revised Statutes ("A.R.S.") §§ 33-1301 et seq.; (3) alleged violations of the Arizona Wage Payment Law ("AWPL"), §§ 25-350 et seq.; (4) breach of contract; (5) fraudulent misrepresentation; (6) negligent misrepresentation; (7) negligent hiring, supervision, and training; (8) negligent breach of habitability; (9) negligent infliction of emotional distress; and (10) intentional infliction of emotional distress. Defendants seek summary judgment on a number of these claims.

**II.     Legal Standard**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure

---

[1] The watermelon season runs roughly from June through September.

- 2 -

1. materials on file, and any affidavits show that there is no genuine issue as to any material fact
2. and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus,
3. summary judgment is mandated "against a party who fails to make a showing sufficient to
4. establish the existence of an element essential to that party's case, and on which that party
5. will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
6.      Initially, the movant bears the burden of pointing out to the Court the basis for the
7. motion and the elements of the causes of action upon which the nonmovant will be unable
8. to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to the
9. nonmovant to establish the existence of a material fact. *Id.* The nonmovant "must do more
10. than simply show that there is some metaphysical doubt as to the material facts" by
11. "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.'"
12. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting
13. Fed. R. Civ. P. 56(e)). A dispute about a fact is "genuine" if the evidence is such that a
14. reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby,*
15. *Inc.*, 477 U.S. 242, 248 (1986). The nonmovant's bare assertions, standing alone, are
16. insufficient to create a material issue of fact and defeat a motion for summary judgment. *Id.*
17. at 247-48. However, in the summary judgment context, the Court construes all disputed facts
18. in the light most favorable to the nonmoving party. *Ellison v. Robertson*, 357 F.3d 1072,
19. 1075 (9th Cir. 2004).
20. **III. Discussion**
21.     *A. Phoenix Agro, SAM Management, and the Martoris*
22.      Defendants first argue that Plaintiffs have failed to establish a basis of liability for any
23. claim against Defendants Phoenix Agro, SAM Management, and the Martoris. In response,
24. Plaintiffs concede that SAM Management is entitled to summary judgment on all claims.
25. They further concede that Phoenix Agro and the Martoris are entitled to summary judgment
26. on all claims except those alleging housing violations under the MSPA and the ARLTA. The
27. Court will address the merits of these remaining claims one at a time.
28.

1. MSPA

Under the MSPA, "each person who owns or controls a facility or real property which is used as housing for migrant agricultural workers" is liable for any violations of federal or state housing standards. 29 U.S.C. § 1823(a). Property is used as housing "for" migrant agricultural workers only if the housing is "provided to the migrant agricultural workers by someone other than themselves. The owner of the facility or property need not use it to house the workers, but someone in control of the facility or property must." *Conlan v. U.S. Dep't of Labor*, 76 F.3d 271, 275 (9th Cir. 1996). If someone in control of the property provides it as housing for migrant agricultural workers, the owner is liable only if he knows or should have known that the controller would use the property for that purpose. *See id.* at 274-75.

Defendants argue that Phoenix Agro and the Martoris are entitled to summary judgment on the MSPA claim because there is no evidence that Phoenix Agro or the Martoris knew or should have known that the property was being used to house Plaintiffs. However, both Phoenix Agro and the Martoris are partners in Eagle Produce, the entity that provided the property to Plaintiffs as housing. As such, and assuming that both Phoenix Agro and the Martoris owned the land or buildings in which Plaintiffs were housed, a jury could reasonably conclude that Phoenix Agro and the Martoris should have known that Eagle Produce would use the land to house Plaintiffs. This claim will therefore proceed to trial.

2. ARLTA

Defendants contend that Phoenix Agro and the Martoris are entitled to summary judgment on Plaintiffs' ARLTA claims because Plaintiffs have failed to produce any evidence from which a jury could find that a landlord-tenant relationship exists between Plaintiffs and these Defendants.[2] In response, Plaintiffs point to their evidence of Phoenix Agro's and the Martoris' ownership of the leased premises and argue that their status as

---

[2] For purposes of this motion, Defendants concede that Plaintiffs occupied the premises at issue pursuant to a valid rental agreement with Eagle Produce.

- 4 -

1  owners is sufficient to make them Plaintiffs' landlords.

2  Plaintiffs base their argument on the language of A.R.S. § 33-1310(6), which defines
3  "landlord" as "the *owner*, lessor or sublessor of the dwelling unit." *Id.* (emphasis added).
4  In essence, Plaintiffs argue that the plain meaning of this language makes every owner,
5  lessor, and sublessor of a rented dwelling unit liable to the tenant of such unit for any
6  violations of the ARLTA, regardless of whether the tenant is in privity of contract or estate
7  with the party being sued. Arizona caselaw, however, forecloses such an interpretation.
8  Since the enactment of the ARLTA, Arizona courts have continued to view privity as a
9  prerequisite to liability under a lease. *See, e.g., Mac Enters., Inc. v. Del E. Webb Dev. Co.*,
10 645 P.2d 1245, 1248 (Ariz. Ct. App. 1982). Thus, contrary to Plaintiffs' contention, the mere
11 fact that Phoenix Agro and the Martoris may have owned the housing rented by Plaintiffs did
12 not make them Plaintiffs' landlords. Because Plaintiffs have failed to produce any evidence
13 from which a jury could find that Phoenix Agro and the Martoris were Plaintiffs' landlords,
14 the Court will grant summary judgment in favor of Phoenix Agro and the Martoris on
15 Plaintiffs' ARLTA claims.

16  *B. Fraudulent Misrepresentation*

17 Defendants next argue that Plaintiffs' fraudulent misrepresentation claim is barred by
18 Arizona's economic loss doctrine. Specifically, Defendants contend that the fraud claim is
19 based on the same facts and seeks the same damages as the breach-of-contract claim, and is
20 therefore indistinguishable from that claim. In response, Plaintiffs maintain that they seek
21 emotional damages for their fraud claim in addition to their economic losses. Thus, because
22 they do not seek the same damages for their fraud claim, Plaintiffs argue, the economic loss
23 doctrine does not apply.

24 The problem with Plaintiffs' argument is that they have not specially pleaded these
25 alleged emotional damages as required by Rule 9(g) of the Federal Rules of Civil Procedure.
26 Rule 9(g) requires all items of "special damage" to be "specifically stated." "Special
27 damages are those elements of damages that are the natural, but not the necessary or usual,
28 consequence of the defendant's conduct . . . ." 5A Charles Alan Wright & Arthur R. Miller,

1  *Federal Practice and Procedure* § 1310, at 346-47 (3d ed. 2004). The damages recoverable
2  in a fraud case are usually "limited to the actual pecuniary loss sustained."[3] Steven J.
3  Gaynor, Annotation, *Fraud Actions: Right to Recover for Mental or Emotional Distress*, 11
4  A.L.R.5th 88, § 2[a] (1993). Thus, emotional damages attributable to fraud are special
5  damages that must be specially pleaded.

6      In their Amended Complaint, Plaintiffs do not specifically state that they are seeking
7  emotional (or mental) damages caused by the alleged fraud. They merely aver generally that
8  they "are entitled to actual and consequential damages" as a result thereof. [Doc. # 4 ¶ 81;
9  *see also* ¶ 109(j).] These general allegations did not put Defendants on notice that Plaintiffs
10 intended to seek emotional damages for the alleged fraud. The "failure to plead with the
11 requisite specificity under Rule 9(g) . . . bars recovery for the items of special damage that
12 are not set forth in the pleading." 5A Wright & Miller, *supra*, § 1312, at 363. Thus,
13 Plaintiffs are barred from seeking emotional damages in connection with their fraud claim.

14     This procedural bar to the recovery of emotional damages brings Plaintiffs' state-law
15 fraud claim squarely within Arizona's economic loss doctrine. "Generally, under [this
16 doctrine], a plaintiff who suffers only pecuniary injury as a result of the conduct of another
17 cannot recover those losses in tort. Instead, the claimant is limited to recovery under the law
18 of contract." *Apollo Group, Inc. v. Avnet, Inc.*, 58 F.3d 477, 479 (9th Cir. 1995) (applying
19 Arizona law). Because Plaintiffs are barred from seeking emotional damages for the alleged
20 fraud, the only possible damages they can recover for this claim are their alleged economic
21 losses. These losses are identical to the losses Plaintiffs seek to recover under their breach-
22 of-contract claim. Consequently, the claim for fraudulent misrepresentation is barred by the

---

26  [3] Although some courts have held that emotional damages are recoverable in fraud
27 cases, Gaynor, *supra*, § 2[a], it does not appear that Arizona has addressed this question. For
   purposes of this Order, the Court simply assumes that Arizona permits recovery of emotional
28 damages in such cases.

- 6 -

economic loss doctrine.[4] *See* Eddward P. Ballinger & Samuel A. Thumma, *The History, Evolution and Implications of Arizona's Economic Loss Rule*, 34 Ariz. St. L.J. 491, 504 (2002) ("[F]raud claims that are 'interwoven and indistinct from the heart of the contractual agreement' are barred by the economic loss rule." (quoting *Hotels of Key Largo, Inc. v. RHI Hotels, Inc.*, 694 So. 2d 74, 78 (Fla. Dist. Ct. App. 1997))).

*C. Intentional Infliction of Emotional Distress*

Defendants next argue that Plaintiffs' claim for intentional infliction of emotional distress fails as a matter of law because Plaintiffs cannot establish that Eagle Produce's conduct was "extreme and outrageous" as required by Arizona law. *Ford v. Revlon*, 734 P.2d 580, 585 (Ariz. 1989). The conduct at issue here is Eagle Produce's failure to repair certain defective conditions on the premises it leased to Plaintiffs. These defective conditions included mouse and fly infestation, an inadequate cooling system, limited water, and broken doors, windows, and beds.

Arizona courts have limited recovery for intentional infliction of emotional distress to particularly egregious circumstances. "A plaintiff must show that the defendant's acts were 'so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.'" *Mintz v. Bell Atlantic Systems Leasing*, 905 P.2d 559, 563 (Ariz. Ct. App. 1995) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). The court determines, "'in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery.'" *Lucchesi v. Stimmell*, 716 P.2d 1013, 1016 (Ariz. 1986) (quoting Restatement (Second) of Torts § 46 cmt. h). Only when reasonable minds

---

[4] In their motion, Defendants also argue that Plaintiffs' claim for intentional infliction of emotional distress is barred by the economic loss doctrine. Defendants, however, appear to back away from this argument in their Reply. There, they respond to Plaintiffs' contrary argument only as it applies to the fraudulent misrepresentation claim. Regardless, Plaintiffs' claim for intentional infliction of emotional distress clearly seeks more than merely economic damages (i.e., it seeks emotional damages), and is therefore outside the purview of the economic loss doctrine.

could differ in determining what conduct is sufficiently extreme or outrageous does the issue go to the jury. *Id.*

One relevant factor in determining outrageousness is whether the defendant has abused a position of authority over the plaintiff. *Id.* (citing Restatement (Second) of Torts § 46 cmt. e). Although Arizona has not addressed the conduct element in the landlord-tenant context, other courts have found landlords liable "for extreme abuse of their position."[5] Restatement (Second) of Torts § 46 cmt. e. The circumstances that have evidenced such extreme abuse, however, are absent from this case. *Cf. German v. Fed. Home Loan Mortgage Co.*, 885 F. Supp. 537, 571-72 (S.D.N.Y. 1995) (failing to reveal the existence of lead paint on the premises); *Aweeka v. Bonds*, 97 Cal. Rptr. 650, 652 (Dist. Ct. App. 1971) (unlawful eviction in retaliation for demanding repairs).

Under the facts of this case, assuming all of Plaintiffs' allegations to be true, Plaintiffs merely allege that Eagle Produce failed to make the premises habitable. They allege no other affirmative misconduct on the part of Eagle Produce. Such allegations are sufficient to state a claim for intentional infliction of emotional distress only if this Court concludes that a breach of the implied warranty of habitability is enough, standing alone, to support a jury finding of outrageousness. The Court acknowledges that at least two courts outside of Arizona appear to have reached this precise conclusion. See *Stoiber v. Honeychuck*, 162 Cal. Rptr. 194 (Dist. Ct. App. 1980), and *Fair v. Negley*, 390 A.2d 240 (Pa. Super. Ct. 1978). But this Court does not find those authorities persuasive. No reasonable jury could find that the

---

[5] Defendants argue that the parties' employment relationship should inform the Court's analysis of this issue. They cite *Mintz* and *Nelson v. Phoenix Resort Corp.*, 888 P.2d 1375 (Ariz. Ct. App. 1994), as factual illustrations of just how "rare" it is "to find conduct in the employment context that would rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Mintz*, 905 P.2d at 563. Their reliance on these cases, however, is misplaced. Both cases involved the question of whether the manner of an employee's termination was extreme and outrageous. The conduct complained of in this case, by contrast, is Defendants' conduct as landlord, not as employer, in failing to repair defective conditions on the premises. The parties' employment relationship is immaterial to the conduct at the heart of Plaintiffs' intentional-infliction-of-emotional-distress claim.

- 8 -

mere failure to make premises habitable, without more, is "atrocious and utterly intolerable in a civilized society."[6] Thus, the Court will grant Defendants' motion for summary judgment on the intentional-infliction-of-emotional-distress claim.

*D. Claims Under the AWPL and for Breach of Contract*

At the heart of Plaintiffs' AWPL and breach-of-contract claims is the allegation that Defendants did not pay Plaintiffs all of their agreed upon wages for the 2005 season.[7] Defendants argue that, even assuming they improperly compensated Plaintiffs, the evidence of the amount of the allegedly unpaid wages is too speculative to support a damages award. Before addressing this argument, however, the Court must address Defendants' motion to strike.

### 1. Defendants' Motion to Strike

Defendants move to strike certain paragraphs from Plaintiffs' statement of facts, arguing that these paragraphs set forth a basis for calculating damages that Plaintiffs failed to disclose during discovery. Specifically, Defendants contend that Plaintiffs failed to disclose that they were seeking damages for unpaid tons in the amount of "six tons per day per person." In response, Plaintiffs argue that although the six-tons-per-day estimate first appears in this litigation in response to Defendants' motion for partial summary judgment, it is a consistent clarification of their deposition testimony and was therefore disclosed. Alternatively, Plaintiffs argue that the failure to disclose was harmless.

The Federal Rules of Civil Procedure place an affirmative duty on parties to disclose any damages computation and the evidence on which that computation is based, and to supplement the damages disclosure if they later learn that the computation is materially

---

[6] This conclusion is especially true where, as here, most of the individual Plaintiffs returned to work for Defendants and lived in the same allegedly intolerable housing for multiple seasons.

[7] Plaintiffs conceded in their response to Defendants' motion for summary judgment that the one-year statute-of-limitations period set forth in A.R.S. § 12-541(5) limits their AWPL and breach-of-contract claims to the 2005 season. [Pls.' Resp. (Doc. # 148) at 2.]

- 9 -

incomplete or misleading. Fed. R. Civ. P. 26(a)(1)(A)(iii), (e)(1). Failure to comply with these requirements prevents a party from using the information it failed to disclose in support of a motion or at trial "unless the failure was substantially justified or is harmless." *Id.* 37(c)(1).

During discovery, Plaintiffs estimated their damages at $3,000 each for the 2005 season. None of the Plaintiffs estimated damages on a per-day basis, even in response to an interrogatory directly calling for such an estimate.[8] Plaintiffs, however, seem to argue that Defendants could have worked backwards from the per-season damages total to arrive at a per-day damages total that would have approximated the six-tons-per-day computation. If Plaintiffs had testified during their depositions that they were underpaid every single day that they worked for Defendants, then this argument may have had some merit. But none of the Plaintiffs gave such testimony. Although some of the Plaintiffs testified that they arrived at the per-season estimate by calculating tonnage on a daily basis, none of the Plaintiffs stated that they were underpaid for every day that they worked, or that the tonnage was miscalculated for every day that they worked. Thus, the six-tons-per-day computation is a new damages computation that was not disclosed during discovery.

The failure to disclose this computation was not harmless. Had Plaintiffs disclosed this computation, Defendants would have had the opportunity to conduct further discovery to test the six-tons-per-day calculation. For example, Defendants could have further deposed Plaintiffs concerning inconsistencies between the six-tons-per-day calculation and their earlier deposition testimony. They also could have further deposed Plaintiffs concerning how the amount of the unpaid tonnage could have remained constant from day to day when they did not always work the same number of hours in a day and when the supply of watermelon

---

[8] By interrogatory, Defendants asked Plaintiffs to identify "each day you alleged you were not properly paid wages, . . . why you believe you were not accurately compensated, and the amount you believe you are owed." [Dfts.' Reply (Doc. # 153) at 3 n.2.] Plaintiffs responded by estimating damages at $3,000 per season without providing any explanation as to how this amount was calculated.

- 10 -

1  fluctuated depending on the time of season.  Therefore, pursuant to Rule 37(c)(1), the Court
2  will not consider evidence of unpaid wages in the amount of "six tons per day per person"
3  in ruling on this motion, and Plaintiffs are barred from presenting this evidence at trial.

        2.  Speculative Damages

Turning now to Defendants' argument that Plaintiffs' evidence of the amount of damages is too speculative to support a jury award, the Court finds that Defendants have failed to prove, on this record, that they are entitled to judgment as a matter of law.

Under Arizona law, the burden is on Plaintiffs to prove "the amount of their damages with reasonable certainty." *Gilmore v. Cohen*, 386 P.2d 81, 82 (Ariz. 1963).  Plaintiffs need not establish their damages with mathematical certainty; they need only "supply some reasonable basis for computing the amount of damage and must do so with such precision as, from the nature of [their] claim and the available evidence, is possible." *Id.* at 83. However, damages cannot be based on mere "conjecture or speculation." *McNutt Oil & Refining Co. v. D'Ascoli*, 281 P.2d 966, 970 (Ariz. 1955).

Assuming the facts in the light most favorable to Plaintiffs, the Court cannot say as a matter of law that Plaintiffs have failed to supply a reasonable basis for determining the amount of their allegedly unpaid wages.  To begin with, Plaintiffs allege that rent was wrongfully deducted from their paychecks.  In support of this allegation, Plaintiffs have produced copies of paychecks that evidence a twenty-one dollar rent deduction.  Plaintiffs next allege that Defendants paid them for less tons of watermelon than they actually cut. Several Plaintiffs testified at their depositions that they were able to determine the tonnage actually cut on a daily basis by counting the number of trailer loads of watermelon they cut in a day and through their years of experience.  Assuming Plaintiffs could calculate the weight of the trailers and can still remember the number of allegedly unpaid tons (Plaintiffs admit that they did not keep any written records of the allegedly missing tonnage), Plaintiffs could compare the number of tons they actually cut to the number of tons they were paid for to determine their unpaid wages.  Such testimony would be sufficient evidence for the jury to reasonably calculate damages.  Therefore, on this record, and assuming the facts in a light

1 most favorable to Plaintiffs, the Court finds that Defendants have failed to meet their burden
2 of showing that they are entitled to judgment as a matter of law. Accordingly, summary
3 judgment on this issue will be denied.

### E. Claims Under the MSPA

#### 1. Failure to Properly Make, Keep, and Preserve Payroll Records

Defendants argue that Plaintiffs have not offered sufficient evidence to support their claim under 29 U.S.C. § 1821(d) for failure to properly make, keep, and preserve payroll records. Defendants maintain that Plaintiffs' pay stubs for the 2003-2005 seasons demonstrate that they complied with this statutory obligation.

The MSPA requires agricultural employers to "make, keep, and preserve records" of certain information relating to worker compensation for a period of three years. 29 U.S.C. § 1821(d)(1). The required information includes the basis on which wages are paid; the number of piecework units earned, if paid on a piecework basis; and the number of hours worked. *Id.* In addition, agricultural employers must provide their workers with "an itemized written statement" of the foregoing information at the end of each pay period. *Id.* § 1821(d)(2).

The Court finds that genuine issues of fact preclude the entry of summary judgment in Defendants' favor on this claim. First, it is undisputed that Defendants agreed to pay Plaintiffs the greater of $7.00 per hour or $7.00 per ton of watermelon cut. Thus, the watermelon tonnage was a piecework unit that Defendants were required to disclose to Plaintiffs at the end of *each* pay period. Plaintiffs, however, have presented evidence that Defendants failed to meet this obligation. First, Defendants did not disclose any paperwork for the 2003 watermelon season that contained the required tonnage. Second, even with regard to the paperwork that was disclosed for the 2004-2005 seasons, Plaintiffs have presented evidence that the tons recorded did not accurately reflect the number of tons actually cut. One of Plaintiffs' supervisors allegedly admitted to them that Defendants were not including the small watermelon in the tonnage count, even though Plaintiffs were

required to cut this watermelon.[9] Therefore, in light of these factual disputes, this claim will proceed to trial.

### 2. Failure to Properly Compensate

Defendants next argue that they are entitled to summary judgment on Plaintiffs' claim under 29 U.S.C. § 1823(a) for failure to properly compensate for the same reason mentioned above in relation to the AWPL and breach-of-contract claims. Defendants contend that the evidence of the amount of Plaintiffs' allegedly unpaid wages is too speculative. For the reasons previously stated, the Court will deny Defendants' motion for summary judgment as to this claim.

### 3. Failure to License, Register, and Insure Vehicles

Finally, Defendants argue that Plaintiffs have offered no evidence in support of their claim under 29 U.S.C. § 1841(b)(1) for failure to license, register, and insure certain vehicles. In response, Plaintiffs concede that Defendants are entitled to summary judgment on this claim. The Court will therefore grant Defendants' motion as to this claim.

*F. Claims Under the ARLTA*

Defendants next argue that Plaintiffs' ARLTA claims against Eagle Produce arising out of the 2002-2004 seasons are time-barred. Plaintiffs concede that these claims are time-barred as to Arce-Mendez and Canez-Santana; however, they argue that the ARLTA claims of the remaining Plaintiffs are not subject to the statute of limitations. The parties agree that claims under the ARLTA are subject to the one-year statute-of-limitations period set forth in A.R.S. § 12-541(5). Plaintiffs filed this action on November 29, 2005. Thus, if the above claims accrued before November 29, 2004, they are time-barred.

Although accrual is usually a jury issue, summary judgment is appropriate when the

---

[9] Contrary to Defendants' contention, the fact that evidence is presented in the form of hearsay is not a proper basis for excluding it from the Court's consideration at the summary judgment stage. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) ("At the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents.").

1 plaintiff knows he has been injured by the defendant and unreasonably fails to investigate 2 whether he has a cause of action. *Walk v. Ring*, 44 P.3d 990, 996 (Ariz. 2002). Here, 3 Plaintiffs argue that the ARTLA claims of the remaining Plaintiffs did not accrue until eight 4 months *after* they filed those claims in this lawsuit, at the time they acquired additional 5 knowledge concerning the extent of their injuries. Plaintiffs' position seems to be that a 6 claim does not accrue until one knows *the full extent* of one's injury. This, however, is not 7 the test. A plaintiff "need not know *all* the facts underlying a cause of action to trigger 8 accrual": knowledge "that a wrong occurred and caused injury" suffices. *Doe v. Roe*, 955 9 P.2d 951, 961 (Ariz. 1998). All of the remaining Plaintiffs were aware of the same facts that 10 concededly triggered accrual of ARLTA claims for Arce-Mendez and Canez-Santana. 11 Therefore, the ARLTA claims arising out of the 2002-2004 seasons are time-barred as to all 12 Plaintiffs.

13 *G. Negligence Claims*

14 Finally, Defendants argue that Plaintiffs' claims for negligent hiring, supervision, and 15 training; negligent breach of habitability; negligent misrepresentation; and negligent 16 infliction of emotional distress are all preempted by Arizona's workers' compensation 17 scheme. In response, Plaintiffs concede that these claims should be dismissed. Thus, the 18 Court will grant summary judgment as to all of Plaintiffs' negligence claims.

19 **IV. Conclusion**

20 Accordingly,

21 **IT IS ORDERED** that Defendants' Motion for Partial Summary Judgment (Doc. # 22 146) is granted in part and denied in part as follows:

23 1. Defendant SAM Management is granted summary judgment on all claims;

24 2. Defendants Phoenix Agro, Arthur Martori, and Susan Lois Martori are granted 25 summary judgment on all claims except the claim alleging housing violations under the 26 MSPA, 29 U.S.C. § 1823;

27 3. Defendant Eagle Produce is granted summary judgment on the fraudulent 28 misrepresentation claim; the intentional-infliction-of-emotional-distress claim; the claim

- 14 -

1 under the MSPA for failure to license, register, and insure certain vehicles pursuant to 29
2 U.S.C. § 1841(b)(1);[10] and all negligence claims. The ARLTA, AWPL, and breach-of-
3 contract claims will all proceed to trial against Eagle Produce but will be limited to the events
4 arising out of the 2005 watermelon season;[11]

5 **IT IS FURTHER ORDERED** granting in part and denying in part Defendants'
6 Motion to Strike (Doc. # 151). Plaintiffs are barred from presenting any evidence at trial of
7 unpaid wages in the amount of "six tons per day per person"; however, the remainder of
8 Defendants' motion is denied without prejudice.

9 DATED this 6th day of March, 2008.

_James A. Teilborg_
United States District Judge

---

[10] All other claims alleged under the MSPA will proceed to trial.

[11] Despite the fact that Defendant Ricardo Reyna was not a party to this motion, pursuant to Plaintiff's concession at Doc # 62, the Court's findings regarding Eagle Produce also control the claims against Reyna.

- 15 -